**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| JEFFREY L. REINHART | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| VS. | * | |
| | * | NO:   3:10CV00236  SWW |
| MICHAEL J. ASTRUE,  Commissioner, | * | |
| Social Security Administration | * | |
| | * | |
| | * | |
| Defendant | * | |

**ORDER**

Plaintiff Jeffrey L. Reinhart appeals the final decision of the Commissioner of the Social Security Administration denying his claim for disability income benefits.  The parties have submitted briefs, and the case is ready for decision.  After careful consideration, and for the reasons that follow, the decision of the Administrative Law Judge ("ALJ")[1] is affirmed.

**I.     Procedural History**

Reinhart filed applications for disability benefits and supplemental security income on September 26, 2007, alleging a disability date of November 19, 2006.  The Social Security Administration denied Reinhart's claims initially and upon reconsideration, and he received an administrative hearing before an ALJ on November 17, 2009.  Reinhart, represented by counsel, appeared and testified at the hearing.  Also appearing and testifying was Tyra Watts, a vocational expert ("VE").  In a decision dated January 29, 2010, the ALJ concluded that Reinhart was under a disability, but a substance abuse disorder was a contributing factor material to the

---

[1] The Honorable John H. Goree, Administrative Law Judge.

determination of his disability. Accordingly, the ALJ found that from the alleged onset date through the date of his decision, Reinhart was not disabled under the Social Security Act. Reinhart requested that the Appeals Council review the ALJ's decision, and his request was denied.

## II.     ALJ's Decision

At the time of the hearing, Reinhart was 42 years old with a high school education and past relevant work as a painter, a plater, and a seal handling laborer. In making his decision, the ALJ followed the required five-step sequence to determine: (1) whether Reinhart was engaged in substantial gainful activity; (2) if not, whether Reinhart had a severe impairment; (3) if so, whether the impairment, or combination of impairments, met or equaled a listed impairment; (4) if not, whether the impairment, or combination of impairments, prevented Reinhart from performing past relevant work; and (5) if so, whether the impairment, or combination of impairments, prevented Reinhart from performing any other jobs available in significant numbers in the national economy.  *See* 20 C.F.R. § 416.920(a)-(g).   Additionally, because substance abuse is a concern in Reinhart's case, the ALJ went on to determine whether his substance abuse disorder is a contributing factor material to the determination of disability.  *See Brueggmann v. Barnhart*, 348 F.3d 689, 694-95 (8th Cir. 2003).

At step one of the five-step evaluation, the ALJ determined that Reinhart had not engaged in substantial gainful activity since November 19, 2006, the alleged onset date.  At step two, the ALJ concluded that Reinhart has the following severe impairments:  gastritis; hiatal hernia; grade III-IV esophagitis; gastroesophageal reflux disorder; Chron's disease; gallbladder problems; cervical degenerative joint disease; anxiety disorder, not otherwise specified;

depressive disorder, not otherwise specified; alcohol dependence/withdrawal; and alcohol-induced mood disorder.  At step three, the ALJ determined that Plaintiff's severe impairments did not meet or medically equal the requirements of any listed impairments for presumptive disability under the regulations.      Before reaching step four of the sequential evaluation, the ALJ concluded that, considering all of Reinhart's impairments, including his substance abuse disorder, he has the residual functional capacity ("RFC")  to perform significantly less than a full range of sedentary work and that due to pain and fatigue, he would not be reliable to complete the required tasks of an eight-hours-a-day, forty-hours-per-week job.

At step four, the ALJ concluded that Reinhart is unable to perform any past relevant work.  At step five, the ALJ found that considering Reinhart's age, education, work experience, and residual functional capacity, based on all of his impairments including a substance abuse disorder, there are no jobs that exist in significant numbers in the national economy that Reinhart can perform.

After the ALJ reached the initial disability determination using the standard five-step sequence, without deductions for the effects of substance abuse disorders, he considered whether Reinhart's substance abuse disorder is a contributing factor material to the determination of disability–that is, whether Reinhart would still be disabled if he stopped substance use.

First, the ALJ determined that if Reinhart stopped the substance use, he would continue to experience symptoms and/or limitations associated with gastritis, gastroesophageal reflux disorder, Chron's disease, gallbladder problems, cervical degenerative joint disease,  anxiety disorder, and depressive disorder.  Further, the ALJ concluded that Reinhart's combination of medially determinable impairments would be severe.

Second, the ALJ determined that if Reinhart stopped the substance use, he would not have an impairment or combination of impairments that meet or equal listed impairment. Third, the ALJ determined that if Reinhart stopped the substance use, he would have the RFC to perform a wide range of light work. Fourth, the ALJ determined that if Reinhart stopped the substance he would continue to be unable to perform past relevant work. Fifth, based on the testimony of a VE, the ALJ determined that if Reinhart stopped the substance use, considering his age, education, work experience and RFC, there would be a significant number of jobs in the national economy that he could perform. Thus, the ALJ concluded that Reinhart was not disabled.

### III. Analysis

The Court's review is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004).

Reinhart raises the following arguments on appeal: (1) the ALJ erred in his determination that alcohol was a contributing factor material to Reinhart's disability; (2) the ALJ erred in his determination regarding Reinhart's RFC, absent the effects of alcohol abuse; (3) the ALJ erred in following VE testimony that conflicted with the *Dictionary of Occupational Titles* ("DOT"); and

(4) the ALJ erred in posing a hypothetical question that contained vague limitations and did not include all of Reinhart's limitations.

### 1. Effect of Alcohol Abuse

It is undisputed that Reinhart is an alcoholic. Congress has eliminated alcoholism or drug addiction as a basis for obtaining social security benefits. *See* Pub. L. No. 104-121, 110 Stat. 852-56 (1996). "An individual shall not be considered disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. 423(d)(2)(C). Reinhart has the burden to prove that alcoholism or drug addiction is not a contributing factor. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). However, "[i]f the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow." *Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir.2003).

Reinhart argues that the ALJ "did not really consider" evidence that his impairments did not improve when he abstained from alcohol for a period of time in 2007. According to Reinhart, the evidence shows that the severity of his condition would continue even if he stopped drinking.

Considering the record as a whole, the evidence does not support a finding that Reinhart abstained from alcohol for a significant period of time or that his impairments did not improve when he ceased alcohol consumption for a brief period in 2007.

On February 9, 2007, Reinhart was admitted to the Arkansas Methodist Hospital complaining of nausea, vomiting, and neck pain. According to a written report prepared by Dr.

Roland Hollis, when Reinhart entered the hospital, he had not consumed alcohol for 24 hours, he was jaundiced and had markedly elevated liver enzymes, and he received treatment for alcohol withdrawal. (Tr. 330) Dr. Hollis consulted Dr. Adel Hassan, a surgeon. (Tr. 326, 330) After reviewing test results, Dr. Hassan concluded that Reinhart had gallstones and liver damage. Dr. Hassan's report states: "[T]he patient needs to be treated medically and stop drinking before any attempt is made to remove his gallbladder surgically. Discussed with the patient. He seemed to understand he would need to stop drinking immediately and allow his liver to recover. Will take several months because he would have to have enough recovery to make him a reasonable surgical risk." (Tr. 326).

During Reinhart's hospital stay, he received IV antibiotics, his condition gradually improved, and he began tolerating food. (Tr. 330) A discharge record dated February 17, 2007 records that Reinhart was diagnosed with acute alcoholic hepatitis, gallstones, urinary tract infection, low potassium, alcohol withdrawal, and chronic alcoholism, and he was sent home with medications and instructions to cease drinking. (Tr. 330)

On February 20, 2009, Reinhart met a follow-up appointment with Dr. Hollis. Reinhart reported to Dr. Hollis that he no longer consumed a six-pack of beer every day because it made him sick and that he had not started any of the medications prescribed upon his discharge from the hospital because he was waiting to receive a check. (Tr. 272) Dr. Hollis referred Reinhart to Dr. Robert Alleman, a surgeon, for a second opinion regarding his gallbladder problems. (Tr. 272) On March 13, 2007, Reinhart told Dr. Alleman that he had not been drinking for five weeks, and Dr. Alleman arranged for him to undergo an endoscopic retrograde cholangiopancreatogram ("ERCP") on March 29, 2007. Tr. 250). However, Reinhart failed to

show up for the ERCP, and the record contains no evidence that Reinhart ever returned to Dr. Alleman.

Reinhart argues that "during this period of alcohol abstention," he continued to have severe problems, which supports a finding that he would continue to have severe symptoms even if he stopped using alcohol.  However, the record shows that during Reinhart's hospital stay in February 2007, when he was not drinking and received treatment for alcohol withdrawal, he gradually improved.

Furthermore, the record is void of objective evidence that Reinhart continued to abstain from alcohol after his discharge from the hospital, and the record supports a finding that Reinhart's own reports regarding his alcohol consumption are not credible.   During the November 17, 2009 hearing, Reinhart testified that he lacked money to buy alcohol and he was "lucky to get a 6-pack to a 12-pack in a week." (Tr. 51)  According to Reinhart, it had been "a good couple of years" since he had "been into alcohol like [he] used to be." (Tr. 51)    However, on July 28, 2009, Reinhart was admitted to Twin Rivers Medical Center for alcohol abuse, and he reported that he had been drinking a liter of vodka and a pint every day. (Tr. 583) Additionally, in September 2008, Reinhart was hospitalized and reported drinking 19 to 24 beers per day (Tr. 701), and in August 2008, he was hospitalized after drinking 12 beers and using two lines of crystal methamphetamine (Tr. 600)  Furthermore, the ALJ noted that in August 2008, Reinhart told a counselor that he drank alcohol to cope, he did not want to stop drinking, and he would probably stop drinking only when his liver finally failed.  (Tr. 849)

Evidence shows that when Reinhart has no access to alcohol, his physical and mental conditions improve.  In 2001, after a week of medication and alcohol detoxification at the St.

7

Vincent Health System for alcohol dependence, Reinhart integrated well and resolved suicidal ideation. (Tr. 219)  In February 2007,  Plaintiff was hospitalized for six days, he gradually improved, and he was discharged home with instructions not to drink.  (Tr. 330)   In August 2008, Plaintiff was admitted to the hospital after he overdosed on pain medication. (Tr. 593) Upon admission, Reinhart was agitated with memory deficits and tremors due to alcohol withdrawal, and he had a Global Assessment of Functioning ("GAF")[2] score  of  25. (Tr. 594-596)  During his hospitalization, Reinhart became cognizant about the effects of alcohol and his need to avoid the use of habit forming substances.  (Tr. 596)  Upon his discharge, Reinhart did not exhibit any signs suggestive of withdrawal; he reported greatly improved mood, sleep, and appetite; and his GAF score was 60. (Tr. 596)

On September 6, 2008, Reinhart was admitted to St. Bernard's Medical Center for alcohol dependence and withdrawal and reported that he stabbed himself in the leg because he was shaking so badly from withdrawal tremors.  (Tr. 701)   During his hospitalization, Reinhart responded to medication for anxiety, and physicians restarted medication for Chron's disease.  (Tr. 702).   Reinhart's GAF improved from 28 at his admission to 58 at discharge.  (Tr. 701)    Finally, in July 2009, Reinhart was hospitalized for three days for alcohol detoxification.  (Tr. 583).  He tolerated medication, interacted appropriately with peers and staff, and was discharged as clinically stable.  (Tr. 584-585).   Additionally, Reinhart's GAF

---

[2]A GAF score  is a method of  "reporting the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, at pp. 30-32 (4th ed.) (DSMIV).  The scores range from 0 to 100, and the lower the score, the lower the level of functioning.  A GAF score of 41-50 indicates serious symptoms, DSMIV, 34, and GAF score of 51-60 indicates moderate symptoms. *See* DSMIV, 34.

improved from 35 at intake to 50 at discharge. (Tr. 583)

The evidence demonstrates that Reinhart is an alcoholic, that his physical and mental impairments improve when he abstains from alcohol and complies with medical treatment, that he has failed to comply with prescribed treatment, and that alcohol abuse stands in the way of his normal functioning. The Court finds that substantial evidence on the record as a whole supports the ALJ's conclusion that alcohol was a contributing factor material to the determination of Reinhart's disability.

### 2. RFC, Absent Effects of Alcohol Abuse

A claimant's RFC, what a claimant can still do despite his limitations, is a function-by-function assessment of the claimant's ability to do work-related activities based on all of the relevant evidence. *See Harris v. Barnhart,* 356 F.3d 926, 929 (8th Cir. 2004). Here, the ALJ concluded that absent substance abuse, Reinhart would have the RFC to perform a wide range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), including the ability to lift 20 pounds occasionally and 10 pounds frequently; sit six to eight hours in an eight-hour work day; stand and walk for six to eight hours in an eight hour work day; and stand and walk one to two hours without interruption. The ALJ further concluded that because of mild to moderate fatigue and neck pain, Reinhart would only occasionally be able to climb, stoop, crouch, kneel, and crawl, and he would never be able to balance, perform tasks involving overhead reaching, or be around unprotected heights. The ALJ found that Reinhart would require an indoor work environment with regular breaks and no temperature extremes. As for mental abilities, the ALJ limited Reinhart to unskilled, rote activities, including the ability to understand, follow, and remember concrete instructions and maintain superficial contact with supervisors, coworkers,

and the public.

Reinhart contends that the ALJ failed to consider all of his limitations and restrictions in determining his RFC.  In support of his argument, Reinhart cites his own testimony, an attending physician statement by Dr. Hollis, dated December 3, 2009 (Tr. 1040-1043), and portions of a mental status and adaptive functioning report by Dr. Suzanne Gibbard, a consultive examiner (Tr. 422-426).

The Court finds that the ALJ properly concluded that Reinhart's testimony regarding the intensity, persistence, and limiting effects of his symptoms are not credible to the extent that they are inconsistent with the RFC assessment.   When analyzing a claimant's subjective complaints of pain and limitations, the ALJ must examine: (1) the claimant's daily activities, (2) the duration, frequency and intensity of the pain, (3) precipitating and aggravating factors, (4) the dosage, effectiveness and side effects of any medication, and (5) functional restrictions.  *See Teague v. Astrue*  638 F.3d 611, 615 (8th Cir. 2011)(citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984)). The ALJ need not explicitly discuss each of the foregoing factors, and may properly discount the claimant's testimony where it is inconsistent with the record.  *Id*.

Reinhart testified that he suffers sever headaches and neck pain and that, when he sleeps in his van, his neck is so stiff that he has to turn his shoulders in order to look behind him. Reinhart also testified that due to gastrointestinal problems, he would need several unscheduled bathroom breaks each day.

Regarding his neck problems, an MRI of Reinhart's cervical spine in June 2008 revealed only a mild left lateral disc bulge at the C4-05 level and a left lateral disc budge at the C5-C6 level.  Although the 2008 findings were more prominent than an earlier MRI in 2006, the ALJ

noted that Reinhart was treated only with pain medication, and nothing in the record indicates that he sought or received treatment from a specialist for his neck pain.  Additionally, Reinhart's own testimony indicates that neck stiffness he was experiencing at the time of the hearing resulted from sleeping in a van.

As for Reinhart's testimony regarding the limiting effects of his gastrointestinal symptoms, the ALJ properly found that his failure to follow prescribed treatment detracted from the credibility of his testimony.  *See Guilliams v. Barnhar,* 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.").  As noted in the ALJ's decision, in August 2007, Reinhart saw Dr. Kenneth Rogers, a gastroenterologist, and he underwent multiple tests showing that he had gastritis, gastroesophageal reflux disease, hiatal hernia, esophagitis, and Chron's disease.  In a progress report dated September 25, 2007, Dr. Rogers noted that Reinhart was taking Nexium and Pentasa, had no indigestion, abdominal pain or dyspahgia, and had five to six bowel movements a day, without any blood.  Reinhart returned to Dr. Rodgers in October, 2008 with complaints of diarrhea and up to eight bowel movements a day. Dr. Rodgers noted that Reinhart failed to comply with his prescribed treatment and that he was drinking.  Dr. Rogers assessed Reinhart as a noncompliant, alcoholic patient. (Tr. 866-67).  The evidence shows that Reinhart failed to follow treatment directives and continued abusing alcohol against medical advice.

In his attending physician's statement, Dr. Hollis wrote that due to chronic pain and abdominal symptoms, Reinhart would be unable to maintain gainful employment.  The ALJ found that Dr. Hollis's statement relied heavily on Reinhart's subjective reports of his symptoms and limitations and did not have substantial support from other evidence relating to the severity

of Reinhart's physical complaints, compliance with treatment, and substance abuse.

Dr. Hollis represented that objective tests support his opinion regarding Reinhart's limitations because an "endoscopy shows proof of chronic ulceration" and an "MRI spine shows bulging disc." (Tr. 1040) However, an MRI from June 2008 revealed only a mild left lateral disc bulge at the C4-05 level and a left lateral disc budge at the C5-C6 level, no spinal stenosis, and only mild narrowing of the neural foramen.

Dr. Hollis's own treatment records conflict with his December 2009 statement regarding Reinhart's limitations. In November 2008, Reinhart presented to Dr. Hollis complaining of pain in his right shoulder. (Tr. 897) Dr. Hollis performed a physical examination and recorded that all bodily systems were within normal limits, and that the intensity of Reinhart's shoulder pain improved with medication. Similarly, in September 2009, Reinhart complained of neck pain, and Dr. Hollis performed a physical examination. Dr. Hollis's report shows that the neck pain was markedly reduced with medication and that Reinhart had a full range of motion for all extremities. (Tr. 542-543)

As noted by the ALJ, Dr. Hollis's statement makes no reference to Reinhart's failure to comply with treatment prescribed by his doctors. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)(quoting *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir.2008)("'A claimant's noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion and, therefore, can be considered in determining whether to give that opinion controlling weight.'"). Nor does Dr. Hollis's statement contain any reference to Reinhart's alcohol abuse, even though Dr. Hollis's treatment notes record that Reinhart suffers from chronic alcoholism. (Tr. 330)

Citing the ALJ's finding that Dr. Hollis's statement fails to address compliance with treatment and substance abuse, Reinhart contends that remand is required to obtain a medical opinion regarding the effect of alcohol. However, the Court finds that other medical records, including those prepared by Dr. Hollis, and the observations of other treating physicians, support the ALJ's assessment that Reinhart would have the RFC to perform a wide range of light work if he stopped the substance abuse.

An ALJ is not required to adopt the opinion of a physician on the ultimate issue of a claimant's ability to engage in substantial gainful employment. *See Qualls v. Apfel*, 158 F.3d 425, 428 (8th Cir.1998). "'It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record.'" *Id.* (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013–14 (8th Cir.2000)). In this case, the Court finds that the ALJ properly concluded that Dr. Hollis's opinion was without substantial support from other evidence in the record, which rendered it less persuasive.

Reinhart underwent a Mental Status and Evaluation of Adaptive Functioning with Dr. Suzanne Gibbard, a licensed psychologist, on December 5, 2007. Reinhart argues that the ALJ failed to consider Dr. Gibbard's opinion that he "may have problems with the capacity to sustain completion of tasks and complete them within a timely fashion." (Tr. 426). However, Dr. Gibbard's report states that Reinhart would have the capacity to cope with mental cognitive work demands, and her report indicates that her comment that Reinhart "may have problems" completing tasks was based on Reinhart's report that "he becomes distracted but is able to finish things." (Tr. 426) Dr. Gibbard noted that Reinhart also reported that his anxiety interfered with

his concentration, but she noted, "No problems were noted during the evalution." (Tr. 426) Additionally, Dr. Gibbard's report reveals that Reinhart was able to recall name, number and color after a five minute interval, and he could concentrate adequately enough to count backward from 20 to 1 and to subtract 3 from 100, until he reached 73.  Dr. Gibbard also reported that Reinhart told her that he was depressed, but he did not believe that he "was bad enough mentally" to prevent him from working.  (Tr. 422)

Dr. Gibbard assessed Reinhart's Global Assessment of Functioning ("GAF") score at 50, and Reinhart asserts that the ALJ erred by failing to follow this assessment.   However, other evidence in the record shows that when Reinhart abstains from alcohol, his GAF score improves. The Court finds that based on substantial evidence in the record as a whole, the ALJ was not compelled to give controlling weight to Dr. Gibbard's GAF assessment.

### 3.  Vocational Expert Testimony

The ALJ asked the VE  whether jobs existed in the national economy for an individual with Reinhart's age, education, work experience and RFC.  In response, the VE testified that such an individual would be able to perform the requirements of representative occupations such as assembler of small products (DOT 739.687-030) or floor worker (DOT 739.687-098). Additionally, the ALJ asked a hypothetical question limiting Plaintiff to sedentary work with a sit/stand option.  In response, the vocational expert testified that Plaintiff could perform the jobs of a document preparer (DOT 249.587-018) and an order clerk (DOT 209.567-014).

Reinhart attacks the VE's testimony on several grounds.   First, he argues that the VE's

testimony conflicts with the DOT [3] because the position of a small products assembler carries a reasoning level of 2, and based on limitations imposed by the ALJ, he should be limited to jobs with a reasoning level of 1.  However, a reasoning level of 2, which requires a worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and to deal with problems involving a few concrete variables in or from standardized situations, is not inconsistent with Reinhart's RFC, which limited him to unskilled and rote activities, understanding, following, and remembering concrete instructions, and superficial contact with others (*e.g.*, meet, greet, make change, and give simple instructions and directions).  *See Renfrow v. Astrue*, 496 F.3d 918, 927 (8th Cir. 2007)(finding that job requiring level three reasoning was not inconsistent with claimant's ability to follow only simply, concrete instructions); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir.2009) (RFC for simple work not inconsistent with jobs listed in DOT at reasoning level 3).   Furthermore, DOT definitions "are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Hillier v. Social Sec. Admin.* 486 F.3d 359, 366 -367 (8th Cir. 2007)(quoting *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000). "[N]ot all of the jobs in every category have requirements identical to or as rigorous as those listed in the [DOT]." *Id.*

      Second, Reinhart asserts that the job of floor worker requires constant work around moving equipment including conveyor lines and tow motors, making it incompatible with the ALJ's RFC restriction that he would not be able to balance.   The DOT does not specifically address whether the job of floor worker requires constant work around moving equipment, but it

---

[3] The ALJ specifically instructed the VE to provide testimony consistent with the DOT and to explain any deviations.

does specify, "Balancing: Not Present - Activity or condition does not exist." DOT, 739.687-098 FLOOR WORKER . The Court finds no inconsistency between the VE's testimony and the DOT.

Reinhart argues that the DOT's description for the job of floor worker is outdated and that the Occupational Information Network ("O-net") classifies the job under the heading "helpers-production workers," which calls for "frequent keeping or regaining balance." The DOT appears on the list of publications from which an ALJ can take administrative notice of reliable job information, and O-net does not appear on that list. *See* 20 C.F.R. § 404.1566(d)(1)-(5). Furthermore, the Court is precluded from considering anything outside the certified transcript in determining whether the ALJ's decision is supported by substantial evidence. *See Delrosa v. Sullivan*, 922 F.2d 480, 483–84 (8th Cir.1991) ("The Social Security Act generally precludes consideration on review of evidence outside the record before the Secretary," unless the new evidence is material and the claimant demonstrates good cause for not submitting it at the administrative level) (internal citations omitted).

Third, Reinhart takes issue with the VE's testimony that under the ALJ's second hypothetical, he would be able to perform the job of document preparer. Reinhart argues that modern technology has rendered the job obsolete, and he reports that the O-net classifies the position as "document management specialist," which requires computer and typing skills. For reasons previously stated, the Court finds no merit to Reinhart's argument that the VE's testimony conflicts with O-net job classifications and descriptions.

Fourth, Reinhart asserts that the job of order clerk carries a reasoning level of 3, "which conflicts with the hypothetical limitations which correspond to reasoning level 1 job situations."

Even assuming that a reasoning level of 3 is inconsistent with Reinhart's ability to understand, remember, and follow concrete instructions and have contact with others including meeting, greeting, making change, and giving simple instructions and directions, the VE also testified that, under the second hypothetical, Reinhart could perform the duties of a document preparer. (Tr. 57) The VE further testified that there were 1,008 document preparer jobs in Arkansas and 250,000 in the national economy. *See Clay v. Barnhart*, 417 F.3d 922, 927, 931 (8th Cir.2005) (disregarding jobs that claimant might not have ability to perform, vocational expert still identified 2,000 other jobs statewide, 161,000 nationally, and 500 locally). The Court finds that Reinhart's argument does not warrant reversal.

### 4. Hypothetical Posed to Vocational Expert

Next, Reinhart argues that the hypothetical questions posed to the vocational expert ("VE") were flawed. In his hypothetical questions, the ALJ ruled out any job requiring the ability to balance, stating: "No job requiring balance because of the issues of fatigue and neck pain." (Tr. 55) Reinhart asserts that the inability-to-balance limitation was too vague and that such a limitation "would also restrict a claimant from being around moving machinery or other hazards." Plf.'s Brief at 16. However, as previously noted, the DOT indicates that the job of floor worker does not require balancing. Reinhart also argues that the ALJ's hypothetical was insufficient because he failed to include a limitation for the inability to turn his head due to neck pain and stiffness. However, the only evidence regarding Reinhart's stiff neck was his testimony that, when he sleeps in his van, his neck is so stiff that he has to turn his shoulders in order to look behind him. Even assuming that the ALJ credited Reinhart's subjective complaint, a temporary stiff neck does not amount to a limitation that was required to be included in the

17

ALJ's hypothetical question.

**IV.     Conclusion**

After careful review, and for the reasons stated, the Court finds sufficient evidence in the record to support the Commissioner's determination.  IT IS THEREFORE ORDERED that the final determination of the Commissioner is AFFIRMED.  Consistent with the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 12TH DAY OF MARCH, 2012.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE